**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**SHERRIE L. COKER,**

      **Plaintiff,**

v.                                     **CASE NO.: 3:07cv151/MCR/MD**

**CHARLES W. MORRIS, SHERIFF
OF OKALOOSA COUNTY,**

      **Defendant.**

_____/

**O R D E R**

Plaintiff Sherrie L. Coker has filed a three-count complaint against Defendant Charles W. Morris, in his official capacity as Sheriff of Okaloosa County, alleging disability discrimination (Count I), gender discrimination (Count II), and workers' compensation retaliation (Count III), in connection with the termination of her employment as a deputy sheriff with the Okaloosa County Sheriff's Office ("OCSO"). Pending before the court is defendant's motion for summary judgment (doc. 41), to which plaintiff has responded (doc. 50).[1] For the reasons that follow, defendant's motion for summary judgment is GRANTED.

**Background**[2]

Coker began her employment as a deputy sheriff with the OCSO in 1998 as a road patrol deputy. In 2001 or 2002, Coker requested and was granted a transfer to a position as a school resource officer at Niceville High School. In this position, Coker performed the

---

[1] Defendant has moved for summary judgment on all three of plaintiff's claims. Plaintiff has advised the court that she is not proceeding on her disability discrimination claim and, after reviewing the record, the court concludes that summary judgment is appropriate on this claim. Plaintiff has also clarified that she is not asserting a sexual harassment claim.

[2] As this case comes before the court on defendant's motion for summary judgment, the court views the following facts in the light most favorable to the plaintiff as the non-moving party. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montout v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

same functions as a road patrol deputy, including making arrests and conducting investigations.[3]

On September 30, 2005, Coker injured her right knee while on duty at Niceville High School. From October 3, 2005 to October 13, 2005, she was out of work on workers' compensation leave. During this time she began receiving treatment for her knee from Dr. Leo Chen, an orthopedic surgeon and a workers' compensation provider. Dr. Chen ordered an MRI, which showed bruising on the inner side of Coker's right knee, a mild effusion, and some swelling.

On October 11, 2005, Dr. Chen provided Mary Rominger, the Human Resource Manager for the OCSO, with a status report on Coker's progress. Dr. Chen reported that Coker was capable of performing sedentary work, but should not be walking. Rominger conveyed this information to Lieutenant Claudia Finn, Assistant Director of School Support and Coker's supervisor. Rominger or Lt. Finn then contacted Coker and informed her that she had been cleared to return to work on light duty. Coker began a light duty assignment in administration on October 14, 2005.[4] She worked in administration for one to two weeks before being told by Lt. Finn that she would have to return to work either as a school resource officer or as a court security officer, neither of which were light duty assignments.[5] Coker chose to return to her previous position as a school resource officer.

Coker's return to full duty and the associated physical demands caused severe and painful swelling in her right knee.[6] Coker eventually called Lt. Finn and stated that she

---

[3] School resource officers have the same physical requirements as deputies on road patrol.

[4] Upon her return to the OCSO, Coker was given a letter of reprimand drafted by Lt. Finn for excessive absences dating back to August 2002. In addition, Lt. Finn outlined a number of ways in which Coker had been insubordinate, irresponsible, or unprofessional since her injury occurred. Coker accepted the reprimand and chose not to appeal it.

[5] It is not clear from the record why Coker was returned to a full duty position. Lt. Finn stated that Rominger had informed her that Coker could return to work as a school resource officer. The only status reports provided by Dr. Chen, however, were dated October 11, 2005, and November 12, 2005, both of which limited Coker to sedentary positions and indicated that Coker should not walk due to the injury in her right knee.

[6] Coker stated in her deposition that she would have to wait thirty to forty-five minutes at the end of each day to remove her pants because of the swelling in her knee.

could no longer serve as a school resource officer because of the swelling in her knee. Rominger then contacted Coker and informed her that if Coker was not at work she would have to take sick leave or annual leave because she was capable of working but chose not to and thus was ineligible for workers' compensation leave. Coker asked if she could be returned to light duty, but Rominger denied this request. Coker did not return to work and instead remained on sick leave.[7]

At the time of her knee injury, Coker was also suffering from a reoccurrence of pain caused by a non-work-related degenerative condition in her neck. Coker first received treatment for this condition in April 2003, when she met with Dr. Bruce Feldman complaining of long-standing neck pain. Coker underwent two surgeries in May 2003 and October 2004 to fuse two of her vertebrae together. Coker's neck pain reoccurred in July 2005 and thus, while on workers' compensation leave, Coker returned to Dr. Feldman on October 4, 2005, for further treatment. Dr. Feldman's office notes from an appointment on November 9, 2005, reflect that Coker had experienced a flare-up of her neck pain in late October and was now "to the point where she's relatively incapacitated. She's not been working. She can't sleep at night. Her headaches are severe. The neck pain and shoulder blade pain are severe." At the time of this appointment, Dr. Feldman believed Coker was "becoming incapacitated" by her pain and he was running out of options to treat her.

In October or early November 2005, Lt. Finn learned that Coker was also being treated for neck pain while on leave for her knee injury. As a result, Lt. Finn requested that Coker obtain a note from her "neck" doctor stating that she could not work.[8] When Coker

---

[7] Coker's time sheets indicate that she was on sick leave from October 27, 2005, to November 14, 2005. On November 7, 2005, however, Lt. Finn called Coker to see if she was working at the school. Coker stated that she was not at work because she had an appointment with Dr. Chen. It is not clear from the record why Lt. Finn believed Coker would be working at the school on this date if Coker had been out on sick leave for over a week.

[8] Coker asserts that she never told Rominger about her neck problems. The only inference the court can draw from the record, however, is that Lt. Finn was at least aware that Coker was receiving treatment on her neck, such that Lt. Finn knew to ask Coker for a note from her "neck" doctor as opposed to any other type of doctor. This inference is supported by the actual severity of Coker's condition in late October and early November as reflected in Dr. Feldman's office notes and Coker's admission in deposition that she had

did not provide a note after two such requests, Lt. Finn warned Coker that she would be fired unless she obtained a note from her "neck doctor." In response, Coker faxed a note from Dr. Feldman to the OCSO stating that Coker should perform "No Work Until Further Notice." This note was transmitted on either November 14 or 15, 2005, but was backdated to October 28, 2005, at Lt. Finn's request, according to Coker. On November 14, 2005, Rominger wrote Coker a letter stating that Coker was being placed on medical leave under the Family Medical Leave Act ("FMLA") retroactive to October 31, 2005, the first day of absence Rominger attributed to Coker's neck injury.

After being placed on FMLA leave, Coker continued to be treated by Dr. Feldman for her neck and Dr. Chen for her knee. On November 30, 2005, Dr. Feldman again operated on Coker's neck, fusing together two more of Coker's vertebrae. Coker returned to Dr. Feldman on December 7, 2005, for a post-operation evaluation. Dr. Feldman's notes from this appointment reflect that Coker was showing improvement in her neck. Dr. Feldman further stated that Coker could slowly begin returning to her normal activities, but should avoid any significant lifting, bending, pushing, or pulling.[9] On January 25, 2006, Coker had her last appointment with Dr. Feldman at which Feldman stated that Coker could resume all of her normal activities.[10] Also in late January, Dr. Chen concluded that surgery on Coker's knee was necessary and surgery was scheduled for mid-February.

On January 30, 2006, Rominger drafted a letter to Coker stating that Coker's FMLA leave was expiring on January 31, 2006, and Coker would be terminated effective February 1, 2006, because she was unable to perform the essential job functions of a deputy sheriff. The letter stated that Coker could reapply for a position as a deputy sheriff once her doctor released her to perform the essential functions of the job. Lt. Finn and Sergeant Bobby Maloney hand-delivered Rominger's letter to Coker on January 31, 2006.

After receiving the letter of January 30, 2006, Coker called Rominger to see if

---

previously told Corporal Eric Denney about her treatment with Dr. Feldman.

[9] There is no evidence that Coker communicated this information to Rominger or Lt. Finn.

[10] There is no evidence that Coker communicated this information to Rominger or Lt. Finn or asked Dr. Feldman for a note clearing her to return to work.

anything could be done. Rominger replied that she could not do anything and instead recommended that Coker file for disability and unemployment benefits. In response, Coker drafted a letter to Dr. Feldman on February 1, 2006, in which she stated:

> My human resource says if you fill in the paperwork attached saying I'm 100% disabled I can receive [sic] my retirement now. If I thought I could give my all to another job I would. I don't feel it's right not to be dependable on a job. I know I can't do it any longer. I would really appreciate if you would agree with me on this matter.

Dr. Feldman received Coker's letter and, without examining Coker again, drafted a letter in support of Coker's claim for disability in which he wrote: "she found that any attempts to return to her usual working activities created flare ups in symptoms of neck pain, headache and upper extremity pain, numbness and tingling." Dr. Feldman further stated that he did not believe additional surgery would provide Coker relief. He concluded that "this leaves us in the unfortunate position where I am recommending that Ms. Coker not return to work in any type of manual labor or physical activity or any type of activity that can cause excessive strain on her neck. Unfortunately, this rules out most vocations, and I think Ms. Coker is an appropriate candidate for 100% disability."[11]

After her termination from the OCSO, Coker continued to receive treatment for her knee. On February 14, 2006, she underwent knee surgery by Dr. Chen to remove damaged cartilage. After the surgery, Coker began physical therapy to improve strength in her knee and range of motion. On February 22, 2006, Dr. Chen evaluated Coker's progress. At that point in Coker's recovery, Dr. Chen believed Coker was at most capable of performing a sedentary position. After seeing Coker again on April 7, 2006, Dr. Chen continued to believe Coker was limited to sedentary work. In early September 2006, Coker discontinued her physical therapy because she felt it hurt her knee. Dr. Chen then met with Coker for their final appointment at which he noted that Coker had reached maximum medical improvement, but still had a 10% impairment of her lower extremity. Dr. Chen imposed a lifting limitation of not greater than twenty-five pounds and should avoid climbing and squatting. In his opinion, Coker could still walk and drive, but probably would not be

---

[11] It is not clear from the record whether Coker was awarded disability benefits.

able to run. Given these constraints, Dr. Chen believed Coker could work full-time in an administrative capacity. In February 2007, Coker began treatment with another doctor who performed surgery on Coker's knee on March 23, 2007.[12] This surgery was successful, but as of November 15, 2007, Coker still could not walk or stand for long periods of time and she had not resumed all of her normal activities.

**Summary Judgment Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "The mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it may affect the outcome of the case under the applicable substantive law. See id.

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings. Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. See Walker v.

---

[12] This doctor is only identified in the record as "Dr. Macey."

3:07cv151/MCR/MD

Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

**Discussion**

**Gender Discrimination**

In Count II of her complaint, Coker asserts a claim for gender discrimination under Title VII, 42 U.S.C. § 2000e et seq. and the Florida Civil Rights Act ("FCRA"), Chapter 760, Florida Statutes. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."[13] 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a claim for employment discrimination through the use of direct, circumstantial, or statistical evidence. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).[14] In cases where a plaintiff relies on circumstantial evidence, the claim is evaluated using the three-step framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, plaintiff has the initial burden of establishing a prima facie case of discrimination, thus creating a rebuttable presumption that an employer acted unlawfully. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). To establish a prima facie case, a plaintiff must show that (1) she belongs to a protected class; (2) she was subjected to an adverse job action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job. Maniccia v. Brown, 171 F.3d 1356, 1368 (11th Cir. 1999) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997); Nix v. WLCY Radio/Rahall Comms., 738 F.2d 1181, 1185 (11th Cir. 1984); McDonnell Douglas, 411 U.S. at 804).

Once a plaintiff has established a prima facie case using the factors in Maniccia or

---

[13] Gender discrimination claims under the FCRA are analyzed under the same standards as claims brought under Title VII. See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

[14] In this case, plaintiff seeks to establish her claim based on circumstantial evidence only.

shown some other evidence of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.[15]  This justification should be "clear, reasonably specific, and worthy of credence."  Hall v. Ala. Ass'n of Sch. Bds., 326 F.3d 1157, 1166 (11th Cir. 2003).  The employer, however, need not persuade the court that it was actually motivated by the proffered reason.  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting Burdine, 450 U.S. at 254, 101 S.Ct. at 1094).  Thus, the defendant's burden is one of production, not persuasion.  Wilson, 376 F.3d at 1087-88.  The Eleventh Circuit has stated that this burden is "exceedingly light."  Holifield, 115 F.3d at 1564 (quoting Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994)).

Once the employer satisfies its burden by articulating one or more legitimate, nondiscriminatory reasons for its action, the presumption of discrimination is eliminated and the burden shifts back to the plaintiff to offer evidence that the alleged reason is a pretext for illegal discrimination.  Wilson, 376 F.3d at 1087.  The plaintiff can satisfy this requirement either directly by "persuading the court that a discriminatory reason more than likely motivated the employer" or indirectly by "persuading the court that the proffered reason for the employment decision is not worthy of belief."  Hall, 326 F.3d at 1166.  Where the employer offers multiple reasons for its decision, the plaintiff must produce sufficient evidence for a reasonable fact finder to conclude that each reason is pretextual.  Chapman v. AI Transport, 229 F.3d 1012, 1037 (11th Cir. 2000).  A plaintiff can establish that an employer's reasons are pretextual by showing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004) (quoting Combs, 106 F.3d at 1538).  Plaintiff, however, "cannot succeed by simply quarreling with the wisdom of that reason."  Chapman, 229 F.3d at 1030 (quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1341 (11th Cir. 2000) and citing Combs, 106 F.3d at 1541-43).  A plaintiff does not

---

[15] Only the burden of production shifts to the defendant.  The burden of persuasion always remains with the plaintiff.  Wilson, 376 F.3d at 1088 (quoting Burdine, 450 U.S. at 253).

establish pretext by arguing that the defendant's decision was mistaken. See Wilson, 376 F.3d at 1092 (quoting Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000)). Title VII allows employers to terminate an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix, 738 F.2d at 1187.

Finally, despite the shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Wilson, 376 F.3d at 1088 (quoting Burdine, 450 U.S. at 253, 101 S.Ct. at 1093, 1095). Because of this, even though a plaintiff may establish a prima facie case and set forth sufficient evidence to reject the defendant's explanation, if no rational factfinder could conclude that the employer's action was discriminatory, then summary judgment may be warranted. Chapman, 229 F.3d at 1025 n.11 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000)).

In this case, Coker has established that she belongs to a protected class and was subjected to an adverse job action when her employment was terminated.[16] Coker, however, has failed to establish that her employer treated similarly situated employees outside her classification more favorably. While Coker has identified a number of individuals who were either allowed to work light duty or offered a position as a dispatcher in lieu of termination, none of these individuals were prohibited by their doctors from

---

[16] The OCSO's alleged refusal to provide Coker a light duty assignment does not constitute an adverse action, as it was not "a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238-39 (11th Cir. 2001). While the OCSO's action may have caused Coker physical discomfort, it did not alter her benefits, pay, or rank. See Benefield v. Fulton County, Ga., 130 Fed.Appx. 308, 313 (11th Cir. 2005) abrogation on other grounds recognized by Crawford v. Carroll, 529 F.3d 961, 973-74 (11th Cir. 2008); Dalton v. Potter, 2007 WL 4414781 *3 (W.D.Ky. Dec. 14, 2007). Further, Coker returned to her position as a school resource officer for only one week before she was retroactively placed on FMLA leave for her non-work-related neck condition. Thus, to the extent Coker's gender discrimination claim is premised on this action, Coker has failed to establish a prima facie case.

performing any work and thus they are not similarly situated.¹⁷  Coker has therefore failed to establish a prima facie case of gender discrimination.

Even if Coker were able to establish a prima facie case of gender discrimination, the court finds that she has not presented sufficient evidence to show that the defendant's reason for terminating her employment was pretext for unlawful discrimination.  Defendant asserts that Coker's employment was terminated because her FMLA leave expired and she had not been cleared by Dr. Feldman to return to work.  While Coker argues her neck condition did not prevent her from working, she has presented no evidence that she ever provided Rominger or Lt. Finn with a note from Dr. Feldman indicating that her work restrictions had been lifted, despite several opportunities to do so.  There is no evidence that Coker informed Rominger or Lt. Finn on December 7, 2005, that she could slowly return to her normal activities, as she was told by Dr. Feldman.  There is also no evidence that she informed them that on January 25, 2006, Dr. Feldman cleared her to resume all of her normal activities.  When Lt. Finn delivered Coker's termination letter six days later, Coker still did not inform her that she had been cleared to return to work or that she was ready to return to work.  Instead, Coker stated that she "had a feeling" the termination letter was coming.  In addition, the termination letter stated that Coker could reapply for a position as a deputy sheriff once she was cleared by her doctor.  Instead of asking Dr. Feldman for a note clearing her to return to work, Coker wrote Dr. Feldman a letter asking him to declare her 100% disabled.¹⁸  Finally, when Coker called Rominger after receiving the termination letter, she did not ask to return to work and did not tell Rominger that Dr. Feldman had cleared her to return to her normal activities.  Instead, Coker asked Rominger if she could be retained for eight months without pay so that she could receive her

---

¹⁷ Coker asserts that the method by which Lt. Finn obtained Dr. Feldman's note was coercive and that she in fact was not prevented from working by her neck condition.  As explained below, however, it is undisputed that at the time of Coker's termination the only information Rominger and Lt. Finn had from Dr. Feldman was that Coker should perform no work until further notice.  The veracity of Dr. Feldman's statement is not in question and, in any event, cannot be attributed to the defendant.

¹⁸ Coker admitted in her deposition that all of the statements in her letter to Dr. Feldman were true, which contradicts her testimony that her neck condition was not preventing her from working at the time of her termination.

retirement benefits.[19]

At any of these opportunities Coker could have informed Rominger or Lt. Finn that she had been cleared by her doctor to return to work. Instead Coker failed to communicate with Rominger or Lt. Finn while she was out on FMLA leave about the progress of her treatment. Thus, when Rominger drafted the termination letter of January 30, 2005, the only information she had regarding Coker's medical status indicated Coker should perform no work until further notice.[20] Rominger thus determined that Coker's employment should be terminated at the expiration of her FMLA leave, consistent with the OCSO's policy. Because Coker was in complete control over the information provided to the OCSO about her neck condition and never provided Rominger or Lt. Finn with any reason to believe that Dr. Feldman's restrictions had changed, she cannot now contend that the decision to terminate her employment was a pretext for unlawful discrimination. Defendant's motion for summary judgment on Coker's gender discrimination claim is therefore due to be granted.

**Supplemental Jurisdiction**

The only remaining count, Count III, involves a state law claim for workers' compensation retaliation. Having granted the motion for summary judgment on Coker's federal claims, the court has the option of dismissing the state law claim or retaining supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367, if retaining jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity. See 28 U.S.C. § 1367; City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, a

---

[19] The record discloses only one communication between Coker and a member of the OCSO during Coker's FMLA leave. Coker testified in her deposition that she contacted Sgt. Maloney on January 25, or 26, 2006, and informed him that she could possibly return to work in two to four weeks. There is no evidence that this information was conveyed to Rominger or Lt. Finn by Coker or Sgt. Maloney even though Sgt. Maloney accompanied Lt. Finn when she delivered the termination letter to Coker.

[20] Coker's argument that Lt. Finn required the language in Dr. Feldman's note is unavailing. First, even if true, this does not change the fact that the veracity of Dr. Feldman's statement is not questioned. Second, there is nothing suspect about an employer requiring documentation of an employee's inability to return to work, particularly when the employee's medical records support her inability to work.

federal court should consider and weigh, in each case, at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.") (internal quotation marks omitted). This case has been pending in this court for a substantial time and the trial date is close at hand. Dismissing this claim at this time would cause unnecessary delay and prejudice to the parties. Further, Coker's workers' compensation retaliation claim is analyzed under the same framework as a federal retaliation claim under Title VII. See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950-51 (11th Cir. 2000); Humphrey v. Sears, Roebuck, & Co., 192 F.Supp.2d 1371, 1374-75 (S.D.Fla. 2002). Based on these considerations, the court will continue to exercise supplemental jurisdiction over Coker's remaining state law claim.

**Workers' Compensation Retaliation**

In Count III of her complaint, Coker asserts that defendant violated Fla. Stat. § 440.205 by terminating her employment in retaliation for her having filed a workers' compensation claim. Section 440.205 provides:

> No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.

Fla. Stat. § 440.205. This section "creates a statutory cause of action for a wrongful discharge in retaliation for an employee's pursuit of a workers' compensation claim . . . ." Bruner v. GC-GW, Inc., 880 So.2d 1244, 1246 (Fla. 1st DCA 2004) (quoting Smith v. Piezo Tech. & Prof'l Adm'rs, 427 So.2d 182, 183 (Fla. 1983) (internal quotation marks omitted)). Section 440.205 does not, however, "provide a blanket prohibition against the discharge of an employee for legitimate business reasons once the employee has filed or pursued a workers' compensation claim, but prohibits only the retaliatory discharge of an employee for the act of filing a workers' compensation claim." Musarra v. Vineyards Dev. Corp., 2004 WL 2713264 *5 (M.D.Fla. Oct. 20, 2004) (citing Pericich v. Climatrol, Inc., 523 So.2d 684, 685 (Fla. 3d DCA 1988)).

The burden-shifting approach used in Title VII retaliation and discrimination claims can be applied to Florida workers' compensation retaliation claims. See Sierminski, 216

F.3d at 950-51; Humphrey, 192 F.Supp.2d at 1374-75.  Under this approach, a plaintiff must first establish a prima face case by showing that (1) she engaged in a statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities.  See id. (citations omitted).  The third element requires a plaintiff to show that (1) the decisionmakers were aware of the protected conduct at the time of the adverse action and (2) the protected activity and the adverse employment action were not wholly unrelated.  See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) abrogation on other grounds recognized by Crawford v. Carroll, 529 F.3d 961, 973-74 (11th Cir. 2008); Russell v. KSL Hotel Corp., 887 So.2d 372, 379 (Fla. 3d DCA 2004).  If a plaintiff establishes a prima facie case, the court should apply the same burden-shifting analysis applicable to a Title VII discrimination claim.  See Humphrey, 192 F.Supp.2d at 1374-75.

In this case, Coker has established that she engaged in a statutorily protected expression when she filed her workers' compensation claim and that she suffered an adverse employment action when defendant terminated her employment at the end of her FMLA leave.[21]  Coker has also established that defendant was aware of Coker's workers' compensation claim at the time it terminated her employment.  Coker's claim for workers' compensation retaliation fails, however, for the same reason as her gender discrimination claim; she has failed to present evidence to show that the defendant's legitimate, non-discriminatory reason for terminating her employment was pretextual.[22]  Defendant's motion

---

[21] Coker claims that defendant retaliated against her by not allowing her to continue in a light duty position when she injured her knee.  Although § 440.205 creates a statutory cause of action for retaliatory intimidation or coercion in addition to retaliatory discharge, see Chase v. Walgreen Co., 750 So.2d 93 (Fla. 5th DCA 1999), an employer's alleged failure to provide work which respects an employee's physical limitations is not actionable under § 440.205.  Florida courts have concluded that this type of a dispute is more properly addressed by the judge of compensation claims under Fla. Stat. § 440.15(6).  See Montes de Oca v. Orkin Exterminating Co., 692 So.2d 257, 259 (Fla. 3d DCA 1997).  Therefore, to the extent Coker's retaliation claim is premised on defendant's failure to provide her a light duty assignment, she has failed to establish a prima facie case.

[22] To the extent Coker's retaliation claim is premised on Lt. Finn's October 14, 2005, letter of reprimand, Coker's claim also fails.  Assuming that Lt. Finn's letter could constitute an act of retaliatory intimidation or coercion, Coker has not challenged the validity of any of Lt. Finn's allegations in the letter and in fact accepted the letter when she received it, thus choosing not to appeal it.  Coker therefore has not shown the letter was pretext for unlawful retaliation.

for summary judgment on Coker's workers' compensation retaliation claim is therefore due to be granted.

Accordingly, it is hereby ordered:

1. Defendant's motion for summary judgment (doc. 41) is GRANTED; and
2. Final judgment is entered in favor of the defendant, with taxable costs assessed against plaintiff. Plaintiff shall take nothing by this action. The Clerk of Court is directed to CLOSE this case.

DONE AND ORDERED on this 22nd day of July 2008.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**